STATE of Ohio ex rel. DILLARD DEPARTMENT STORES, INC., Relator,

v.

[RYAN], Admr., Ohio Bureau of Workers' Compensation et al., Respondents.

[Cite as *State ex rel. Dillard Dept. Stores, Inc. v. Ryan*, 173 Ohio App.3d 339, 2007-Ohio-5556.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–726.

Decided Oct. 18, 2007.

French, J., dissented and filed opinion.

Moscarino & Treu, L.L.P., Michael J. Bertsch, Edward S. Jerse, and Kathleen E. Gee, for relator.

Marc Dann, Attorney General, and Stephen D. Plymale, Assistant Attorney General, for respondent Administrator, Ohio Bureau of Workers' Compensation.

TYACK, Judge.

{¶ 1} Dillard Department Stores, Inc. ("Dillard"), filed this action in mandamus seeking a writ to compel the Ohio Bureau of Workers' Compensation ("BWC") to vacate its order that denied Dillard reimbursement from the surplus fund of money Dillard paid to settle a workers' compensation claim involving Pamela S. Scott.

{¶ 2} In accord with Loc.R. 12, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated to the pertinent evi-

dence and filed briefs. The magistrate then issued a magistrate's decision that contains detailed findings of fact and conclusions of law (attached as Appendix A). The magistrate's decision includes a recommendation that we deny the request for a writ of mandamus.

{¶ 3} Dillard has filed objections to the magistrate's decision. Counsel for the BWC has filed a memorandum in response. The case is now before the court for review.

{¶ 4} Scott was injured in 1999 while working for Dillard, a self-insured employer. Dillard certified her claim for "lumbosacral strain/sprain." When Scott sought recognition of the additional condition of "L4–5 disc bulge," Dillard resisted. A district hearing officer ("DHO") entered an order granting the additional condition. After an appeal, a staff hearing officer ("SHO") also entered an order granting the additional condition. Dillard's further appeal to the Industrial Commission of Ohio ("commission") was refused.

{¶ 5} Dillard next filed an appeal to the Trumbull County Court of Common Pleas under R.C. 4123.512. Counsel for Scott dismissed that appeal and refiled the appeal within the allotted time. Before the appeal could be heard, Scott and Dillard reached a settlement, pursuant to which Dillard paid Scott $15,000 to resolve all workers' compensation claims flowing from her 1999 injuries. Because the settlement included all the 1999 injuries, the appeal to the Trumbull County Court of Common Pleas was dismissed.

{¶ 6} Dillard, through its third-party administrator, then applied for reimbursement of compensation and medical benefits it had paid for the L4–5 disc bulge. Dillard argued that despite the fact it had lost before a DHO, an SHO, and the commission on the issue of recognition of the L4–5 disc bulge, Dillard had been a prevailing party because the Trumbull County Court of Common Pleas had not rendered a judgment on behalf of Scott.

{¶ 7} The BWC, the Self–Insured Review Panel, and the administrator of the BWC all rejected the application for reimbursement. Hence, this action in mandamus was initiated. The magistrate who handled this case has carefully and accurately addressed the pertinent facts and applicable law. Stating the central issue succinctly, a self-insured employer who pays a significant sum of money to settle a workers' compensation claim is not a prevailing party such that the employer can obtain reimbursement from the surplus fund for the money used to settle the claim. This is especially true when the employer has lost at all levels of the commission.

{¶ 8} Dillard, in essence, bought the dismissal of the appeal to common pleas court as a part of the settlement. Dillard did not prevail in any intelligible sense of the word "prevail." Because Dillard did not prevail, it cannot and should not

be paid from the surplus fund. For this reason, we reject Dillard's assertion that application of *State ex rel. Sysco Food Serv. of Cleveland, Inc. v. Indus. Comm.* (2000), 89 Ohio St.3d 612, 734 N.E.2d 361, entitles Dillards to reimbursement. In *Sysco,* the Supreme Court of Ohio held that in derogation of the specific language of R.C. 4123.512(H), a self-insured employer is entitled to reimbursement from the surplus fund when "in a final administrative or judicial action, it is determined that payments of compensation or benefits, or both, made to or on behalf of a claimant should not have been made." Id. at 615, 734 N.E.2d 361, citing R.C. 4123.512(H). *Sysco* carves out a judicial exception on constitutional grounds to the legislature's comprehensive workers' compensation scheme for Ohio—an exception that we believe should not be lightly extended to cover the facts in the case before us.

{¶ 9} Our ruling is not governed by the practical consequence of accepting Dillard's point of view. However, we cannot blind ourselves to the chaos that would result were we to adopt Dillard's position. Self-insured employers would be encouraged to pursue administrative appeals with no semblance of merit, followed by an appeal to common pleas court. Before the trial in common pleas court, the self-insured employer would be able to settle the claim and then turn to the surplus fund for reimbursement of the settlement costs, plus attorney fees, arguing that it had prevailed. The BWC, which had no input to the settlement, would be expected to repay the self-insured employer from the surplus fund. Needless to say, the surplus fund would not long survive, and employers who had actually been defrauded would have no fund to reimburse them.

{¶ 10} We overrule the objections to the magistrate's decision. We adopt the findings of fact and conclusions of law contained in the magistrate's decision. We deny the request for a writ of mandamus.

Writ denied.

DESHLER, J., concurs.

FRENCH, J., dissents.

DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.

FRENCH, J., dissenting.

{¶ 11} Because I would sustain Dillard's objections and grant the requested writ, I respectfully dissent.

{¶ 12} This action concerns Dillard's entitlement to reimbursement from the surplus fund for its payments of compensation and medical benefits to Scott relating to the condition of L4–5 disc bulge. Dillard contends that it is entitled to

reimbursement pursuant to *State ex rel. Sysco Food Serv. of Cleveland, Inc. v. Indus. Comm.* (2000), 89 Ohio St.3d 612, 734 N.E.2d 361. As the majority notes, in *Sysco*, the Ohio Supreme Court held that R.C. 4123.512(H) preserves an employer's right to reimbursement from the surplus fund when, " 'in a final administrative or judicial action, it is determined that payments of compensation or benefits, or both, made to or on behalf of a claimant should not have been made.' " Id. at 614, 734 N.E.2d 361, quoting R.C. 4123.512(H). BWC denied Dillard's request for reimbursement, based on the lack of a final administrative or judicial determination that compensation and benefit payments should not have been made, and Dillard pursued two unsuccessful administrative appeals from the denial of its request.

{¶ 13} Here, like BWC, the magistrate concluded that there has been no administrative or judicial determination that Scott was not entitled to participate in the Workers' Compensation Fund. The magistrate also concluded that BWC is a necessary party to any settlement agreement whereby an employer expects reimbursement from the surplus fund. Dillard objects to both of those conclusions. Specifically, Dillard argues that Scott's second voluntary dismissal of her complaint in Dillard's R.C. 4123.512 appeal constitutes a final determination that Scott is not entitled to participate in the Workers' Compensation Fund. In recommending denial of relator's request for a writ of mandamus, the magistrate concluded that Scott's second voluntary dismissal did not constitute an administrative or judicial determination that Scott was not entitled to participate in the Workers' Compensation Fund and that BWC is a necessary party to any settlement agreement whereby an employer expects reimbursement from the surplus fund.

{¶ 14} Dillard claims entitlement to reimbursement, pursuant to R.C. 4123.512(H), which provides:

> An appeal from an order issued under division (E) of section 4123.511 of the Revised Code * * * in which an award of compensation has been made shall not stay the payment of compensation under the award * * * during the pendency of the appeal. *If, in a final administrative or judicial action, it is determined that payments of compensation or benefits, or both, made to or on behalf of a claimant should not have been made, the amount thereof shall be charged to the surplus fund under division (B) of section 4123.34 of the Revised Code.* * * * In the event the employer is a self-insuring employer, the self-insuring employer shall deduct the amount from the paid compensation the self-insuring employer reports to the administrator under division (L) of section 4123.35 of the Revised Code.

(Emphasis added.) In *Sysco*, 89 Ohio St.3d 612, 734 N.E.2d 361, the Supreme Court held that R.C. 4123.512(H) must be read as preserving a self-insured

employer's right to direct reimbursement from the surplus fund. Id. at 614, 734 N.E.2d 361. By its terms, R.C. 4123.512(H) "limits reimbursement to situations involving 'a final administrative or judicial action [where] it is determined that payments * * * should not have been made.'" *State ex rel. Kokosing Constr. Co., Inc. v. Ohio Bur. of Workers' Comp.*, 102 Ohio St.3d 429, 2004-Ohio-3664, 811 N.E.2d 1134, at ¶ 30, quoting R.C. 4123.512(H). Neither R.C. 4123.512(H) nor *Sysco* requires more to warrant reimbursement. Id. at ¶ 31.

{¶ 15} While the majority frames the issue as whether Dillard "prevailed," the primary dispute here, in terms of the statute, is whether there has been a determination, in a final administrative or judicial action, that payments should not have been made to Scott for the alleged condition of L4–5 disc bulge. In my view, determination of that issue requires consideration of the effect of Scott's two voluntary dismissals, pursuant to Civ.R. 41(A), within the unique appellate process under R.C. 4123.512.

{¶ 16} R.C. 4123.512(A) gives both the claimant and the employer the right to appeal a commission decision regarding the claimant's right to participate in the Workers' Compensation Fund by filing a notice of appeal with the court of common pleas. Regardless of who files the notice of appeal, it is the claimant's responsibility to file a complaint showing a cause of action to participate in the fund and setting forth the basis for the trial court's jurisdiction. R.C. 4123.512(D); *Kaiser v. Ameritemps, Inc.* (1999), 84 Ohio St.3d 411, 413, 704 N.E.2d 1212. The claimant always bears the burden of going forward with evidence and proof to the satisfaction of the court, despite having already satisfied a similar burden before the commission. *Robinson v. B.O.C. Group, Gen. Motors Corp.* (1998), 81 Ohio St.3d 361, 366, 691 N.E.2d 667, citing *Zuljevic v. Midland–Ross Corp.* (1980), 62 Ohio St.2d 116, 118, 16 O.O.3d 140, 403 N.E.2d 986. Appeals pursuant to R.C. 4123.512 are de novo, and the trial court must independently assess whether a claimant is entitled to participate in the Workers' Compensation Fund without regard to the commission's findings. *Youghiogheny & Ohio Coal Co. v. Mayfield* (1984), 11 Ohio St.3d 70, 71, 11 OBR 315, 464 N.E.2d 133; *Rice v. Stouffer Foods Corp.* (Nov. 6, 1997), Cuyahoga App. No. 72515, 1997 WL 691156.

{¶ 17} In *Kaiser*, the Supreme Court addressed voluntary dismissals, pursuant to Civ.R. 41(A), in the context of R.C. 4123.512 appeals, holding that "[a] workers' compensation claimant may employ Civ.R. 41(A)(1)(a) to voluntarily dismiss an appeal to the court of common pleas brought by an employer under R.C. 4123.512." *Kaiser*, 84 Ohio St.3d 411, 704 N.E.2d 1212, syllabus. A claimant's dismissal of her complaint does not affect the employer's notice of appeal, which remains pending until the claimant refiles her complaint. Id. at 415, 704 N.E.2d 1212. However, a claimant may not perpetually delay refiling her complaint

while continuing to receive benefits because the saving statute, R.C. 2305.19, precludes claims refiled more than one year after a voluntary dismissal. "If an employee does not refile his complaint within a year's time, he can no longer prove his entitlement to participate in the workers' compensation system." Id., citing *Rice*, Cuyahoga App. No. 72515, 1997 WL 691156.

{¶ 18} More recently, in *Fowee v. Wesley Hall, Inc.*, 108 Ohio St.3d 533, 2006-Ohio-1712, 844 N.E.2d 1193, the Supreme Court specifically considered a claimant's failure to refile her voluntarily dismissed complaint within one year and held:

> In an employer-initiated workers' compensation appeal pursuant to R.C. 4123.512, after the employee-claimant files the petition as required by R.C. 4123.512 and voluntarily dismisses it as allowed by Civ.R. 41(A), if the employee-claimant fails to refile within the year allowed by the saving statute, R.C. 2305.19, the employer is entitled to judgment on its appeal.

Id. at syllabus. Because the claimant bears the burden of going forward with evidence and proof to the satisfaction of the common pleas court, the claimant's failure to refile a complaint within one year after a voluntary dismissal entitled the employer to a judgment that the claimant was not entitled to participate in the Workers' Compensation Fund, the sole issue before the common pleas court.

{¶ 19} Other Ohio appellate courts have similarly explained the effect of a claimant's failure to refile a complaint within one year after a voluntary dismissal. The Third District Court of Appeals has held that such a failure to refile "operates as a forfeiture of [the] right to participate in the [workers' compensation] Fund and warrants judgment as a matter of law" for the employer in an employer-initiated R.C. 4123.512 appeal. *Goodwin v. Better Brake Parts, Inc.*, Allen App. No. 1–04–37, 2004-Ohio-5095, 2004 WL 2260513, at ¶ 11, citing *Rice*, Cuyahoga App. No. 72515, 1997 WL 691156. The Eighth District Court of Appeals has stated, "If an employee does not refile his complaint within the year's time, he can no longer prove his entitlement to participate in the workers' compensation system, as is his burden on appeal." *Rice*, citing *Zuljevic*, 62 Ohio St.2d at 118, 16 O.O.3d 140, 403 N.E.2d 986.

{¶ 20} While Scott did refile her complaint pursuant to the saving statute, she voluntarily dismissed her refiled complaint with prejudice. Just as if Scott had failed to refile her complaint, Scott's second voluntary dismissal constituted a forfeiture of her right to participate in the Workers' Compensation Fund. At oral argument, BWC indicated that a claimant's abandonment of her claim, as through a second voluntary dismissal, would ordinarily operate as a determination that the claimant is not entitled to participate in the Workers' Compensation Fund. Notably, in a motion for relief from judgment that BWC filed in the R.C. 4123.512 appeal, BWC stated that upon Scott's dismissal with prejudice, "[Scott's]

claim would be deemed denied by a trial court, and [Dillard] will be entitled to reimbursement from the state surplus fund for compensation paid on [Scott's] previously allowed claim."

{¶ 21} A notice of dismissal under Civ.R. 41(A)(1) is generally without prejudice "except that a notice of dismissal operates as an adjudication upon the merits of any claim that the plaintiff has once dismissed in any court." Civ.R. 41(A)(1). In setting forth the double dismissal rule, " 'Civ.R. 41(A) is clear that a second dismissal by a written notice * * * operates as an adjudication on the merits and prohibits the plaintiff from pursuing that claim again.' " *EMC Mtge. Corp. v. Jenkins,* 164 Ohio App.3d 240, 2005-Ohio-5799, 841 N.E.2d 855, at ¶ 7, quoting *Fouss v. Bank One, Columbus, NA* (June 27, 1996), Franklin App. No. 96APE01–57, 1996 WL 361969. After her second dismissal, Scott can no longer prove her entitlement to participate in the Workers' Compensation Fund for the alleged condition of L4–5 disc bulge, as was her burden in the employer-initiated appeal. Scott's second dismissal constituted an adjudication on the merits of her complaint, i.e., an adjudication that she was not entitled to participate in the Workers' Compensation Fund for the alleged condition of L4–5 disc bulge. Therefore, Scott's second voluntary dismissal of her complaint constituted a determination in a final judicial action that Scott was not entitled to participate in the Workers' Compensation Fund.

{¶ 22} In her decision, the magistrate relied on *Youghiogheny,* in which the Ohio Supreme Court considered "whether an employer's [R.C. 4123.512] appeal * * * is subject to dismissal due to the death of the employee during the pendency of the appeal." *Youghiogheny,* 11 Ohio St.3d at 71, 11 OBR 315, 464 N.E.2d 133. The Supreme Court noted, "If the claimant dies during the appellate process, he obviously cannot personally satisfy the required burden of proof" to establish his entitlement to participate in the Workers' Compensation Fund. Id. at 72, 11 OBR 315, 464 N.E.2d 133. However, rather than sanction dismissal of the appeal in favor of either party, the Supreme Court held that the proper procedure was to permit the state to proceed in place of the claimant, so as to "provide the employer with its statutory right to appeal a decision of the commission and also allow the state an opportunity to protect the [surplus] fund." Id. The Supreme Court was particularly opposed to precluding an employer's appeal through no fault of the employer. See id. Unlike the claimants in *Youghiogheny,* who died before having the opportunity to prove their entitlement to participate in the Workers' Compensation Fund, Scott voluntarily forfeited her right to prove her entitlement by dismissing her refiled complaint with prejudice, thus creating an adjudication on the merits in favor of relator. An employer is not denied the right to appeal an adverse decision of the commission when, as here, the employer participated in settlement negotiations, which led to the

execution of a settlement agreement that was approved by the commission, stating that the claimant is not entitled to participate in the Workers' Compensation Fund. Accordingly, I find *Youghiogheny* distinguishable.

{¶ 23} Furthermore, I do not find that the settlement agreement between Dillard and Scott precludes Dillard's request for reimbursement. "Agreements for final settlement of a workers' compensation claim were recognized as valid and enforceable even before express statutory authority therefor was provided in the Workers' Compensation Act. ' * * * Especially have such settlements been regarded as valid when approved by the Industrial Commission.' " *State ex rel. Johnston v. Ohio Bur. of Workers' Comp.* (2001), 92 Ohio St.3d 463, 466, 751 N.E.2d 974, quoting *State ex rel. Weinberger v. Indus. Comm.* (1941), 139 Ohio St. 92, 96–97, 22 O.O. 59, 38 N.E.2d 399.

{¶ 24} Statutory authority for settlement of workers' compensation exists in R.C. 4123.65. In 1993, with the enactment of Am.Sub.H.B. No. 107, the General Assembly made significant changes to that statute, including revisions to the procedure for filing and processing settlement applications and distinctions between the role of state-fund employers and self-insured employers. The amended version of R.C. 4123.65 " 'gives much more latitude to self-insured employers to negotiate settlements with their employees.' " *Johnston,* quoting *Estate of Orecny v. Ford Motor Co.* (1996), 109 Ohio App.3d 462, 466, 672 N.E.2d 679. "The legislature intended by the amendments to promote the use of settlement agreements and to give self-funded employers greater flexibility in negotiating them." *Estate of Orecny,* 109 Ohio App.3d at 467, 672 N.E.2d 679.

{¶ 25} Here, Scott and Dillard executed a settlement agreement and release, pursuant to which Dillard was to pay Scott $15,000 in exchange for Scott's release and discharge of Dillard from any further claims arising from her injuries. The settlement agreement provided:

> The parties further agree that the referenced workers' compensation court appeal cited Pamela S. Scott v. Dillard's Department Stores, and being Trumbull County Court of Common Pleas Case No. 02 CV 2440, will be dismissed with prejudice with the following order: Pamela S. Scott is not entitled to participate in The Ohio Workers' Compensation Fund for the alleged condition of L4–L5 disc bulge at the plaintiff's costs.

{¶ 26} R.C. 4123.65(A) requires a self-insured employer that enters into a final settlement agreement with its employee to mail a copy of the settlement agreement, within seven days of its execution, to the administrator of BWC, who shall place the agreement in the claimant's file. R.C. 4123.65(D) requires the self-insured employer to immediately send a copy of the settlement agreement to the commission, which shall assign the matter to an SHO. The SHO must determine, within 30 days after execution of the settlement agreement, whether

the settlement agreement is "a gross miscarriage of justice" or "is clearly unfair." R.C. 4123.65(D). If the SHO determines that the settlement agreement is not clearly unfair or fails to act within the 30–day time limit, the settlement agreement is approved. Id. Unless disapproved by the SHO, the settlement agreement takes effect at the end of the 30–day period, absent prior withdrawal of consent by either the employer or the employee. See R.C. 4123.65(C). The allowance of 30 days for administrative review provided by R.C. 4123.65 protects the interests of the workers' compensation system. *Gibson v. Meadow Gold Dairy* (2000), 88 Ohio St.3d 201, 203, 724 N.E.2d 787.

{¶ 27} It is undisputed that Dillard sent the settlement agreement to the BWC administrator and to the commission, that an SHO failed to issue an order disapproving the settlement agreement within 30 days after Scott and Dillard executed it, and that the agreement was, therefore, approved. At the latest, the settlement agreement was approved and took effect on February 17, 2004, the day before Scott voluntarily dismissed her complaint with prejudice. The settlement agreement, as approved by the commission, expressly required dismissal of the R.C. 4123.512 appeal with prejudice. The fact that the settlement agreement took effect the day before the dismissal does not alter the conclusion that the dismissal constituted a determination in a final judicial action that Scott was not entitled to participate in the Workers' Compensation Fund.

{¶ 28} For these reasons, I would conclude that Scott's voluntary dismissal with prejudice constituted a determination, in a final administrative or judicial action, that payments to Scott, relating to the condition of L4–5 disc bulge, should not have been made. Therefore, I would sustain Dillard's first objection to the magistrate's decision.

{¶ 29} In its second objection, which the majority overrules without discussion, Dillard objects to the magistrate's conclusion that BWC is a necessary party to any settlement agreement whereby a self-insured employer expects reimbursement from the surplus fund. Nothing in R.C. 4123.65, which sets forth the exclusive procedures for settling workers' compensation claims, requires that BWC be included in settlement negotiations or be a party to a settlement agreement between a self-insured employer and a claimant. To the contrary, R.C. 4123.65(A) speaks of a "self-insuring employer [entering] into a final settlement agreement with an employee," with no mention of BWC's participation in either the settlement process or the final settlement agreement. Were BWC a required party, there would be no need for the statute's requirement that the self-insured employer submit an executed settlement agreement to the BWC administrator. Additionally, R.C. 4123.65(C) provides that "[n]o settlement * * * agreed to by a self-insuring employer and the self-insuring employer's employee shall take effect until thirty days * * * after the self-insuring employer and

employee sign the final settlement agreement." Again, the statute is silent as to any requirement that BWC approve a final settlement between a self-insured employer and its employee. Further indication that BWC is not required to approve settlement agreements between self-insured employers and their employees exists in R.C. 4121.121(B). In its recitation of the duties of the BWC administrator, R.C. 4121.121(B)(18) requires the administrator to approve applications for the final settlement of claims, "except in regard to the applications of self-insuring employers and their employees."

{¶ 30} Despite the absence of statutory authority for its position, BWC argues that it must be a party to a final settlement because of its trustee function in overseeing the proper use and management of the insurance fund. However, the Ohio Supreme Court has stated that R.C. 4123.65's provision of 30 days for administrative review prior to any settlement agreement taking effect is sufficient to protect the interests of the workers' compensation system. See *Gibson*, 88 Ohio St.3d at 203, 724 N.E.2d 787. Here, Dillard complied with the statutory requirements of R.C. 4123.65, and the commission approved Dillard's final settlement with Scott. I find no authority for a requirement that BWC is a necessary party to any settlement agreement whereby an employer expects to apply for reimbursement from the surplus fund. Accordingly, I would sustain Dillard's second objection to the magistrate's decision.

{¶ 31} In conclusion, I would adopt the magistrate's findings of fact but sustain Dillard's objections to the magistrate's conclusions of law. Because, in my view, Dillard met the requirements for reimbursement under R.C. 4123.512(H) and *Sysco*, 89 Ohio St.3d 612, 734 N.E.2d 361; I would conclude that BWC abused its discretion in denying Dillard's request for reimbursement. Accordingly, I would grant the requested writ and order BWC to grant Dillard's request for reimbursement.

## APPENDIX A

### IN MANDAMUS

{¶ 32} Relator, Dillard Department Stores, Incorporated, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Ohio Bureau of Workers' Compensation ("BWC") to vacate the April 20, 2006 order denying relator's request for reimbursement from the surplus fund and ordering the BWC to reimburse relator. Further, relator seeks an award of costs and attorney fees pursuant to R.C. 2731.11.

*Findings of Fact:*

{¶ 33} 1. Pamela S. Scott ("claimant") sustained a work-related injury on June 21, 1999, and relator, a self-insured employer, certified the claim for "lumbosacral strain/sprain."

{¶ 34} 2. On February 22, 2000, claimant filed a motion requesting that her claim be additionally allowed for the following condition: "L4–5 disc bulge." Claimant also requested treatment by Dr. Jeffrey Stychno.

{¶ 35} 3. Claimant's motion was heard before a district hearing officer ("DHO"). The DHO determined that claimant's claim should be additionally allowed for the condition L4–5 disc bulge for the following reasons:

> This finding is based upon: (1) the MRI report of 08/27/1999; (2) the claimant's testimony at hearing that she has persisted with low back and right leg radicular pain subsequent to her 06/21/1999 injury; (3) the claimant's testimony that she did not suffer from back pain prior to 06/21/1999; and (4) the 02/14/1999 report of Dr. Stychno causally relating the above disorder to the injury in this claim.

{¶ 36} 4. Relator's appeal was heard before a staff hearing officer ("SHO") on August 3, 2000, and resulted in an order affirming the prior DHO order and additionally allowing claimant's claim for L4–5 disc bulge.

{¶ 37} 5. Relator's further appeal was refused by order of the commission mailed September 7, 2000.

{¶ 38} 6. Thereafter, relator filed an appeal pursuant to R.C. 4123.512 in the Trumbull County Court of Common Pleas.

{¶ 39} 7. As required by R.C. 4123.512(D), claimant filed a complaint in the common pleas court in December 2000.

{¶ 40} 8. Claimant subsequently filed a voluntary dismissal pursuant to Civ.R. 41(A)(1)(a) and then refiled a complaint within the statutorily provided time provided by R.C. 2305.19.

{¶ 41} 9. Before trial began, relator and claimant agreed on a proposed settlement of claimant's entire workers' compensation claim. Pursuant to that settlement agreement, claimant would receive $15,000 and would forever release and discharge relator from any further claims arising from the injuries she sustained on June 21, 1999. The settlement agreement took into account the fact that the Industrial Commission of Ohio ("commission") had 30 days to approve or disapprove the settlement. Further, the settlement agreement provided that after the 30–day period and provided that the commission approved the settlement, claimant would dismiss her complaint with prejudice with the following language to be included in the court's order:

Pamela S. Scott is not entitled to participate in The Ohio Workers' Compensation Fund for the alleged condition of L4–L5 disc bulge at the plaintiff's costs. Neither the BWC nor the commission participated in the settlement negotiations.

{¶ 42} 10. Relator filed a copy of the settlement agreement with the BWC on January 23, 2004, and with the commission on January 26, 2004.

{¶ 43} 11. On or about February 18, 2004, claimant filed a notice of voluntary dismissal with prejudice pursuant to Civ.R. 41(A)(1)(a). The notice provided as follows:

Plaintiff, Pamela S. Scott, does hereby give notice that this case is dismissed voluntarily, with prejudice, at Plaintiff's cost, pursuant to Rule 41(A)(1)(a), of the Ohio Rules of Civil Procedure.

{¶ 44} 12. Because the commission failed to issue an order either approving or denying the settlement agreement, the settlement agreement was automatically approved.

{¶ 45} 13. On June 11, 2004, relator, through its third-party administrator, applied for reimbursement from the surplus fund for compensation and medical benefits that relator had paid to claimant for the condition L4–5 disc bulge.

{¶ 46} 14. On August 4, 2004, the office of the Ohio Attorney General filed a motion for relief from judgment and substitution of parties on behalf of the BWC. The BWC requested relief, pursuant to Civ.R. 60(B)(5), due to relator's assertion that it was entitled to reimbursement from the surplus fund pursuant to *State ex rel. Sysco Food Serv. of Cleveland, Inc. v. Indus. Comm.* (2000), 89 Ohio St.3d 612, 734 N.E.2d 361, and *Youghiogheny & Ohio Coal Co. v. Mayfield* (1984), 11 Ohio St.3d 70, 11 OBR 315, 464 N.E.2d 133.

{¶ 47} 15. By letter dated August 23, 2004, relator was notified by the BWC that its request for reimbursement was being denied.

{¶ 48} 16. By letter dated September 21, 2004, relator informed the BWC that it was appealing the decision to deny relator reimbursement to the Self–Insured Review Panel.

{¶ 49} 17. By order mailed November 1, 2005, the Self–Insured Review Panel determined that relator was not entitled to reimbursement from the surplus fund because there was no final administrative or judicial determination that compensation and benefit payments should not have been paid to claimant for the disputed condition.

{¶ 50} 18. Relator appealed that decision, and by order dated April 20, 2006, the administrator of the BWC upheld the decision of the Self–Insured Review Panel denying relator's request for reimbursement from the surplus fund pursuant to *Sysco* for the following reasons:

[T]he dispute between the employer and the injured worker concerned a request for an additional allowance in the claim. The injured worker's request for the additional allowance was granted at the administrative level by the Industrial Commission, and the employer then filed an appeal to court on this issue. Prior to a determination on the merits by the court, parties entered into a settlement agreement that ended the dispute between them. * * * [W]hile the settlement ended the dispute, the employer did not "prevail," and there is no administrative or judicial determination that compensation and benefit payments should not have been paid for the disputed condition. The claim remains allowed, as does the disputed condition.

{¶ 51} 19. Thereafter, relator filed the instant mandamus action in this court. Conclusions of Law:

{¶ 52} The issue before the magistrate is framed as follows: When it is the employer who has initiated an appeal, pursuant to R.C. 4123.512, to a common pleas court from an order of the commission finding that the claimant is entitled to participate in the workers' compensation fund for a certain condition and where the employer and the claimant enter into a settlement agreement, without the participation of a representative from the BWC, whereby the claimant agrees to accept a certain sum of money from the employer in exchange for the claimant's voluntarily dismissing the complaint with prejudice and agreeing that the claimant is not entitled to participate in the workers' compensation fund for that allowed condition, does the employer have the right to be automatically reimbursed from the surplus fund pursuant to *Sysco*? For the reasons that follow, it is this magistrate's decision that the employer, relator herein, does not have an automatic right to reimbursement.

{¶ 53} R.C. 4123.512 (formerly R.C. 4123.519) provides an employer or a claimant with the opportunity to appeal certain adverse rulings by the commission. The appeal is initiated by the filing of a notice of appeal by the party seeking relief from the commission's order. Regardless of which party files the notice of the appeal, the employer or the claimant, R.C. 4123.512 requires that the claimant will thereafter file a complaint in the common pleas court.

{¶ 54} The appeal authorized by R.C. 4123.512 is unique in that it is considered a trial de novo. *Youghiogheny*, 11 Ohio St.3d at 71, 11 OBR 315, 464 N.E.2d 133. *Youghiogheny* stated further:

The burden of proof, as well as the burden of going forward, remains with the claimant. * * * This court recently stated that "where an employer appeals an unfavorable administrative decision to the court the claimant must, in effect, reestablish his workers' compensation claim to the satisfaction of the common pleas court even though the claimant has previously satisfied a similar

burden at the administrative level." *Zuljevic v. Midland–Ross* [(1980)], 62 Ohio St.2d [116] at 118, 403 N.E.2d 986.

Id.

{¶ 55} Because the action is de novo, the common pleas court ultimately can either find that the claimant is entitled to participate in the workers' compensation fund or that the claimant is not entitled to participate. Sometimes, the decision of the common pleas court is opposite the decision rendered by the commission. Therefore, sometimes employers then become liable to pay benefits to a claimant whose claim was formerly disallowed by the commission, and sometimes a claimant's previously allowed claim is denied. When the claimant prevails, the claim is allowed, and the employer becomes responsible for the payment of medical bills and potentially for future compensation. However, when the employer prevails, the employer has often already paid medical bills and even other compensation to the claimant who is then no longer entitled to that compensation. In *Sysco*, the court stated that the employer's right to recover this money is unquestioned.

{¶ 56} Effective October 20, 1993, R.C. 4123.511(J) and 4123.512(H) were enacted, and R.C. 4123.515 and 4123.519, which provided for dollar-reimbursement via direct payments from the surplus fund to the self-insured employer, were repealed. Am.Sub.H.B. No. 107, 145 Ohio Laws, Part II, 2990, 3153–3156. R.C. 4123.511(J) provides:

> Upon the final administrative or judicial determination under this section or section 4123.512 of the Revised Code of an appeal of an order to pay compensation, if a claimant is found to have received compensation pursuant to a prior order which is reversed upon subsequent appeal, the claimant's employer, if a self-insuring employer, or the bureau, shall withhold from any amount to which the claimant becomes entitled pursuant to any claim, past, present, or future, under Chapter 4121., 4123., 4127., or 4131. of the Revised Code, the amount of previously paid compensation to the claimant which, due to reversal upon appeal, the claimant is not entitled.

{¶ 57} R.C. 4123.512(H) complements R.C. 4123.511(J) and provides:

> An appeal from an order issued under division (E) of section 4123.511 of the Revised Code or any action filed in court in a case in which an award of compensation has been made shall not stay the payment of compensation under the award or payment of compensation for subsequent periods of total disability during the pendency of the appeal. *If, in a final administrative or judicial action, it is determined that payments of compensation or benefits, or both, made to or on behalf of a claimant should not have been made, the amount thereof shall be charged to the surplus fund under division (B) of section*

*4123.34 of the Revised Code. In the event the employer is a state risk, the amount shall not be charged to the employer's experience. In the event the employer is a self-insuring employer, the self-insuring employer shall deduct the amount from the paid compensation the self-insuring employer reports to the administrator under division (L) of section 4123.35 of the Revised Code.* (Emphasis added.)

{¶ 58} In *Sysco*, the claimant's claim was allowed at the commission level. The employer appealed the claim and continued to pay temporary total disability compensation and medical benefits during the course of the common pleas court proceedings. Ultimately, the court disallowed the claimant's claim in its entirety, and the Cuyahoga County Court of Appeals affirmed that decision. Thereafter, Sysco sought reimbursement from the state surplus fund for the compensation and benefits it had been required to pay the claimant. The commission denied Sysco's request, stating that Sysco's recovery rights were governed by R.C. 4123.511(J), which provides for reimbursement via an offset from any future claims made by the claimant.

{¶ 59} Sysco appealed and argued that R.C. 4123.511(J), as applied to self-insured employers, denies the right to a remedy guaranteed by Section 16, Article 1, Ohio Constitution. Sysco argued that R.C. 4123.512(H) must be read as preserving the right to reimbursement from the surplus fund. The Supreme Court of Ohio agreed.

{¶ 60} In the present case, relator argues that the dismissal with prejudice of claimant's complaint in the common pleas court constitutes a "final * * * judicial action" determining that "payments of compensation or benefits, or both, made to or on behalf of a claimant should not have been made" and that pursuant to R.C. 4123.512(H), the amount of benefits and compensation paid by relator to claimant must be charged to the surplus fund.

{¶ 61} The BWC argues that the settlement agreement and subsequent dismissal of claimant's complaint does not constitute a "final * * * judicial action" that determined that "payments of compensation or benefits, or both, made to or on behalf of a claimant should not have been made." The BWC's argument focuses on the fact that the settlement agreement entered into between relator and claimant preceded the dismissal of claimant's complaint and that relator cannot turn that into a final judicial determination that claimant is not entitled to participate in the workers' compensation fund for L4–5 disc bulge, a determination that would automatically trigger relator's right to reimbursement under *Sysco* and the Ohio Revised Code.

{¶ 62} In arguing that a final judicial termination is not required in order for surplus fund reimbursement to be made, relator points to the court's decision in

*State ex rel. Kokosing Constr. Co., Inc. v. Ohio Bur. of Workers' Comp.*, 102 Ohio St.3d 429, 2004-Ohio-3664, 811 N.E.2d 1134. In *Kokosing*, the claimant, Gregory D. Neff, had sustained at least two industrial back injuries and had hurt his back in a 1985 car accident *before* he commenced employment with Kokosing. In March 1992, Neff told his employer that he had just slipped while on the roof and had injured his back. Kokosing certified Neff's workers' compensation claim as valid and paid medical bills and compensation to Neff.

{¶ 63} In 1997, Neff admitted that he had fabricated the accident at Kokosing in order to get renewed treatment for back pain, which had continued to bother him since the 1980s. Kokosing asked the commission to exercise its continuing jurisdiction to deny the claim based upon Neff's confession and requested reimbursement of all payments Kokosing had paid to Neff. While the matter was pending, Kokosing and Neff entered into a stipulation and agreement, as follows:

> In exchange for Kokosing's agreement to forgo any action against Neff's residence, Neff, among other things, reiterated his admission that the accident did not occur, concurred in the denial of his claim, and agreed that if he became reemployed he would repay Kokosing $100 per week. This stipulation and agreement was filed in the Stark County Probate Court as part of guardianship proceedings and was also incorporated into an October 28, 1997 ex parte commission order that denied the claim in its entirety and ordered reimbursement pursuant to the filed document.

*Kokosing* at ¶ 4.

{¶ 64} Neff repaid only $400 as of August 2001, leaving Kokosing with "$133,419.26 in unreimbursed expenses related to the fraudulent claim." Id. at ¶ 5. Thereafter, Kokosing requested reimbursement from the state surplus fund pursuant to R.C. 4123.512(H) and *Sysco*. The BWC denied Kokosing's request, finding that *Sysco* was inapplicable. Kokosing filed a mandamus action, and this court issued a writ of mandamus vacating the BWC's order and commanding the BWC to enter a new decision reimbursing Kokosing from the state surplus fund pursuant to *Sysco*.

{¶ 65} Upon appeal to the Supreme Court of Ohio, this court's decision was affirmed. The BWC argued the following:

> *Sysco* applies only to what it calls "straight-line appeals," i.e., an employer's appeal of the initial workers' compensation claim allowance.

Id. at ¶ 28. The court disagreed and stated:

> Kokosing contested Neff's claim years later because evidence of fraud did not surface until years later. Like *Sysco*, Kokosing paid extensive compensation

and benefits pursuant to an award that was eventually overturned. The bureau has offered no compelling legal, practical, or financial reason for treating Kokosing any differently from Sysco or for confining surplus fund reimbursement to "straight-line appeals."

\* \* \*

*This case involves a deliberate fabrication of an industrial accident. Kokosing initially relied on what it believed to be claimant's good-faith assertion of an injury and expended tens of thousands of dollars in compensation and benefit payments before claimant's conscience generated a confession.* Kokosing then obtained what the statute requires for surplus fund reimbursement— an administrative declaration that the claim was fraudulent and that the allowance, and the consequent payment of compensation and benefits, should never have occurred.

(Emphasis added.) Id. at ¶ 29–31.

{¶ 66} In the present case, the magistrate finds that the compelling reasons present in *Kokosing* are not present in this case. Therefore, Kokosing does not apply. As noted previously in the findings of fact, claimant had been successful before the commission. Relator filed a notice of appeal in the common pleas court. Pursuant to R.C. 4123.512, claimant was thereafter *required* to file a complaint in the common pleas court. Thereafter, prior to any determination that claimant was not entitled to participate in the workers' compensation fund, relator and claimant entered into a settlement agreement. Thereafter, claimant dismissed her complaint.

{¶ 67} In considering this issue, the magistrate finds the rationale from *Youghiogheny* to be most helpful. In *Youghiogheny*, the claimant, Robert Fairclough Jr., filed a claim for occupational disease benefits, alleging that he was suffering from coal workers' pneumoconiosis with the BWC. The BWC and the commission agreed, and Fairclough's claim was allowed. Thereafter, the employer, a self-insured employer, filed an appeal in the Harrison County Court of Common Pleas pursuant to former R.C. 4123.519, now 4123.512. Fairclough died just before the matter proceeded to trial. Upon motion, the trial court dismissed the action, thereby precluding the employer's appeal. The court of appeals affirmed the dismissal. Ultimately, the matter was appealed to the Supreme Court of Ohio pursuant to a motion to certify that case with another case. The *Youghiogheny* court set out the issue as follows:

[W]hether an employer's appeal from an adverse ruling by the Industrial Commission is subject to dismissal due to the death of the employee during the pendency of the appeal.

Id. at 71, 11 OBR 315, 464 N.E.2d 133.

{¶ 68} The BWC argued that a workers' compensation claim abates upon the death of the claimant and cited *Ratliff v. Flowers* (1970), 25 Ohio App.2d 113, 54 O.O.2d 213, 266 N.E.2d 848, in support. In *Ratliff,* the employee was initially granted benefits by the commission. Thereafter, Ratliff filed a further claim for additional compensation for a subsequent disability alleged to have arisen from the original accident. The claim was denied, and the claimant appealed the matter to the Scioto County Court of Common Pleas. Ratliff died prior to any disposition of his appeal. The court ultimately concluded that an employee must recover pursuant to his individual right under the workers' compensation statutes and that the right abates upon the death of the employee.

{¶ 69} In *Youghiogheny,* the court distinguished *Ratliff* specifically on the basis that the rationale from *Ratliff* should not be applied to an appeal initiated by the employer because that would violate the rationale behind former R.C. 4123.519 (4123.512) and preclude an employer's appeal through no fault of its own. Consequently, the court found that upon the death of the employee, the state of Ohio becomes the real party in interest to the litigation, and the state should proceed in place of the claimant because this process "will provide the employer with its statutory right to appeal a decision of the commission and also allow the state an opportunity to protect the fund." *Youghiogheny,* 11 Ohio St.3d at 72, 11 OBR 315, 464 N.E.2d 133.

{¶ 70} In *Youghiogheny,* the court stressed that there is a difference between an appeal to the common pleas court initiated by the employee/claimant and an appeal initiated by the employer. When the employer is the party appealing the decision of the commission, it is the employer's appeal, even though it is the employee/claimant who is required to file the complaint and who has the burden of proof. Therefore, if the employee/claimant dies before a final determination, the employee/claimant's estate is not substituted as a party because the employee/claimant's right abates at death. However, when it is the employer who has initiated the appeal, it would be unfair and deny the employer the opportunity to recover any amount of improperly paid benefits.

{¶ 71} Because relator initiated the appeal in the common pleas court, this magistrate finds that the appeal was, in reality, relator's. When relator and claimant entered into settlement negotiations and reached an agreement whereby claimant would dismiss the complaint, claimant was, in reality, dismissing relator's appeal. Unlike in *Kokosing,* where the claimant had committed fraud and

the BWC and commission were both involved and administratively an order was put on denying Neff's claim in its entirety, the BWC was not a party to the settlement negotiations and was not a party to the agreement.

{¶ 72} At oral argument, the magistrate ascertained and counsel agreed that claimants and employers do settle and dismiss R.C. 4123.512 appeals with some regularity. Obviously, some of these cases are settled in the employer's favor. Further, counsel argued that often employees who prevail in this manner have been permitted to be reimbursed from the surplus fund. In other words, the BWC has permitted some employers to be reimbursed. However, in the present case, the BWC did not agree to permit the employer (relator) to be reimbursed. Relator argues that as a matter of law, reimbursement is automatic. As explained herein before, this magistrate disagrees. Further, the fact that the BWC has previously approved reimbursements does not make it a legally enforceable right in the absence of either BWC approval or a final determination that claimant is not entitled to participate.

{¶ 73} The magistrate finds that in this case, claimant's dismissal of her complaint following a settlement agreement between her and relator actually constitutes a dismissal of relator's action and does not constitute a final determination by either the commission or a court that claimant is not entitled to participate in the workers' compensation fund. Further, the magistrate finds that relator's attempt to include language in the dismissal entry that claimant is not entitled to participate in the surplus fund for L4–5 disc bulge does not turn that dismissal into something it is not. Lastly, because surplus-fund reimbursement directly involves the BWC and the funds that the BWC is legally charged by law with the responsibility of safeguarding, the BWC is a necessary party to any settlement agreement whereby an employer expects to receive reimbursement from the BWC's surplus fund. Consequently, this court should deny relator's request for a writ of mandamus. Relator's request for an award of costs and attorney fees is denied.